Filed 9/27/22  State of Cal. Correctional Health etc. v. Public Employment Relations etc. CA1/5

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| STATE OF CALIFORNIA, CORRECTIONAL HEALTH CARE SERVICES,<br><br>        Petitioner,<br><br>v.<br><br>PUBLIC EMPLOYMENT RELATIONS BOARD,<br><br>        Respondent;<br><br>KEVIN M. HEALY,<br><br>        Real Party in Interest. | A162617<br><br>(Public Employment Relations Board Decision No. 2760S Case No. SF-CE-290-S)<br><br>**ORDER MODIFYING OPINION [NO CHANGE IN JUDGMENT]** |

BY THE COURT:

The opinion filed September 26, 2022 is modified as follows:

On page 25, replace the second sentence of the disposition with the following: "PERB and Employee shall recover their costs on appeal."

This order does not effect a change in the judgment.


Date: _____09/27/2022_____         _____Simons, J._____, Acting P.J.


1

Filed 9/26/22 State of Cal. Correctional Health etc. v. Public Employment Relations etc. CA1/5 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| STATE OF CALIFORNIA, CORRECTIONAL HEALTH CARE SERVICES,<br><br>　　　Petitioner,<br><br>v.<br><br>PUBLIC EMPLOYMENT RELATIONS BOARD,<br><br>　　　Respondent;<br><br>KEVIN M. HEALY,<br><br>　　　Real Party in Interest. | A162617<br><br>(Public Employment Relations Board Decision No. 2760S Case No. SF-CE-290-S) |

State of California, Correctional Health Care Services (Employer) filed a petition for writ of extraordinary relief from the decision by respondent, the Public Employment Relations Board (PERB or the Board), finding Employer violated the Ralph C. Dills Act (Gov. Code, §§ 3512–3524[1]; hereafter, the Dills Act) by refusing to promote real party in interest Kevin M. Healy (Employee) because of his protected activity. Employer argues PERB's violation finding is not supported by substantial evidence. Employer also challenges the

---

[1] All undesignated statutory references are to the Government Code.

1

remedies ordered by PERB, arguing they violate the constitutional merit principle (Cal. Const., art. VII, § 1). We deny the petition.

## FACTUAL BACKGROUND[2]

Employer provides medical, dental, and mental health services to inmates at the Department of Corrections and Rehabilitation. During the relevant time period, Employee was an Office Technician with Employer at San Quentin State Prison (San Quentin). Employee was also an active shop steward for the Service Employees International Union (SEIU or the Union).

In early August 2017, a Health Care Compliance Analyst (HCCA) position with Employer, monitoring compliance with inmate disability rights, became vacant. Employer circulated job openings for both the permanent position and for an "out-of-class" assignment to temporarily fill the position until it was permanently filled.[3] The permanent position was posted at the Associate Governmental Program Analyst (AGPA) classification or, alternatively, the Staff Services Analyst (SSA) classification.[4] Both the AGPA and SSA classifications paid more than Employee's classification,

---

[2] The background facts are taken primarily from PERB's decision in this matter and from the proposed ALJ decision, which was adopted by PERB "subject to and as supplemented by" PERB's decision.

[3] An out-of-class position may be filled without completing steps required by the civil service process, such as competitive interviews.

[4] A civil service "class" or classification is "a group of positions sufficiently similar with respect to duties and responsibilities that the same title may reasonably and fairly be used to designate each position allocated to the class and that substantially the same tests of fitness may be used and that substantially the same minimum qualifications may be required and that the same schedule of compensation may be made to apply with equity." (§ 18523.)

2

Office Technician.  Employee met the minimum requirements for the out-of-class and permanent positions and applied for both.

Employee was selected for the out-of-class position, began the assignment on August 8, 2017, and was informed the assignment would continue "for 120 days, or until the position has been filled."  The position was supervised by Carla Thompson-McKinney (we follow PERB and the parties in referring to Ms. Thompson-McKinney as McKinney).  Around the time he began the out-of-class position, Employee, in his capacity as Union shop steward, represented another employee in a complaint about McKinney, and also emailed San Quentin's Chief Executive Officer Stephen Harris with additional Union complaints about McKinney.  On August 14, McKinney told Employee he needed to stop performing his Union duties and focus solely on his HCCA duties because that job was the only one he should be worried about.

Several days after Employee began the out-of-class HCCA position, San Quentin's Chief Medical Executive, Dr. Elena Tootell, told Harris, the Chief Executive Officer, that she was resigning because Employee's placement in either the out-of-class or permanent HCCA position was "unacceptable." Tootell rescinded her resignation after Harris told her Employee did not meet the minimum qualifications for the permanent position (which was not true), appointed Tootell and McKinney to the hiring panel for the permanent position, and decided to prematurely end Employee's assignment to the out-of-class position.[5]  Tootell testified she viewed Employee as one of several employees who had been improperly using the Union to complain about McKinney in order to deflect attention from their own poor work

[5] Harris initially sought to end Employee's out-of-class assignment around August 14, but then decided to "hold off."

performance. Tootell claimed Employee exhibited poor work performance during a July 2017 project she supervised, but the Board found "the weight of the evidence does not reflect poorly on [Employee's] performance on this brief project."[6]

Interviews for the permanent HCCA position were conducted on August 18, 2017. To fill a permanent position, Employer appoints a hiring panel, develops interview questions, and determines scoring criteria. After the interviews, the hiring panel ranks the candidates and certifies a list of the three top-scoring candidates. The typical practice for vacancies at San Quentin is that the hiring panel recommends the top three candidates for reference checks. After conducting the reference checks, the panel recommends its top candidate to the hiring authority. If one or two of the top candidates declines the position, the standard practice at San Quentin is to recommend for hiring any remaining candidates in the top three. Typically, the hiring authority follows the panel's recommendation. Harris, San Quentin's Chief Executive Officer, was the hiring authority for the HCCA position. The hiring panel for the permanent position consisted of McKinney, Tootell, a human resources manager, and a health program manager.

A few hours before Employee's interview, McKinney told a human resources analyst that Employee "is not getting the job. His job is with the Union. He doesn't have the focus to be" in the position. McKinney made it clear she did not want to supervise Employee because of his Union affiliation. When the analyst asked McKinney, "What if he is the best candidate for the position," McKinney responded, "if I have anything to do with it, that won't happen." McKinney also referred to Employee "missing deadlines" as a

---

[6] We omit details about this project as Employer does not dispute the Board's finding.

4

reason for disfavoring him, however, the Board found this asserted reason was unwarranted and pretextual.[7] McKinney told Tootell that Employee had missed a deadline, and the Board found it more likely than not that one of them shared the allegation with the rest of the hiring panel. McKinney also told Tootell she would have a difficult time supervising Employee.

After the August 18 interviews, the hiring panel discussed the applicants' answers to the interview questions and then individually assigned scores for each applicant's answers. The top-scoring applicant scored 88 percent, the second place applicant scored 65 percent, and the third place applicant, Employee, scored 60 percent. Each panelist rated Employee as "competitive," indicating that he possessed the knowledge and understanding required by the position. The panel unanimously recommended that each of the top three applicants—including Employee—move to the next phase of the hiring process, reference checks.

The top-scoring candidate was offered the position and, on or before August 25, accepted the offer. On August 25, Employee was notified that his assignment to the out-of-class position would end that day. On August 28, Employee and other Union stewards wrote Harris seeking removal of McKinney from her managerial position, which was then still probationary. Harris shared this letter with Tootell a day or two later. On August 29, Employee informed the human resources manager on the hiring panel about McKinney's preinterview statements that Employee would not get the position. The manager told Employee to take the matter to the merit board, but did not conduct any investigation or take any other action.

---

[7] We again omit details about this incident as Employer does not dispute the Board's finding.

5

At some point, the top-scoring candidate withdrew her acceptance of the position. The precise date of this withdrawal is not in the record; the relevant evidence is as follows. On September 5, 2017, a human resources analyst informed Tootell that, after speaking with the top-scoring candidate, the analyst believed the candidate would likely rescind her acceptance. The analyst recommended the hiring panel complete reference checks on an alternative candidate, and Tootell asked the analyst for references for the second-highest scoring candidate. On September 8, the analyst informed Tootell that the top-scoring candidate "hasn't gotten in touch with me to confirm whether she will be" rescinding her acceptance or not, and asked if Tootell would "like to send notification that we will rescind the contingent offer of employment if she does not complete her livescan by Monday, September 11th?"

The second-ranked candidate did not fill the position. Employer did not check Employee's references or offer him the permanent position. Tootell testified the hiring panel decided it would only hire the two top-ranked candidates, but could not say when the panel made this decision. Because this testimony was not supported by any other panel member and conflicted with the panel's unanimous agreement, following the interviews, that Employee's application should proceed to the next stage, PERB did not credit it. Harris testified that, had the hiring panel recommended Employee for the position, Harris would have hired Employee.

In a letter dated September 29, 2017, Employee was notified that he had not been selected for the permanent position and that another applicant had been selected. Employer reposted the permanent position in November 2017 and filled it in May 2018. Between August 25, 2017 and May 2018, the position was vacant.

6

PROCEDURAL BACKGROUND

In April 2018, Employee filed an unfair practice charge with PERB alleging Employer refused to promote him in retaliation for his protected union activities. In January 2019, PERB issued a complaint against Employer. (See Cal. Code Regs., tit. 8, § 32640(a) ["The Board agent shall issue a complaint if the charge or the evidence is sufficient to establish a prima facie case."].) In June 2019, a multi-day evidentiary hearing was held before a PERB administrative law judge (ALJ).

In August 2020, the ALJ issued a proposed decision in favor of Employee. The ALJ found Employee established that Employer's decision not to promote him to the HCCA position was motivated, at least in part, by antiunion animus. The ALJ then considered Employer's affirmative defense that it had a legitimate, nondiscriminatory reason for not promoting Employee. The ALJ rejected Employer's assertion that the disparity in scores between the top-ranked candidate and the second- and third-ranked candidates could explain Employer's failure to promote Employee because "the facts presented at hearing suggest that the panel was moving forward with a recommendation of the second-ranked candidate after the first-ranked candidate withdrew from consideration," and the second-ranked candidate scored only slightly higher than Employee did. The ALJ further reasoned that, "because it is clear that the second-ranked candidate never assumed the position ..., the choice, to the extent there was one, was between [Employee] and a vacancy. [Employer] clearly preferred to leave this critical position vacant rather than hire [Employee], who had been successfully performing the job, and who was deemed qualified for the permanent position. Given the multiple indicia of [Employer's] discriminatory intent, I cannot credit its proffered non-discriminatory explanation for the failure to recommend

7

[Employee] for the permanent HCCA position over the weight of evidence to the contrary." As a remedy, the ALJ proposed ordering Employer to "[o]ffer [Employee] the next available SSA/AGPA position at San Quentin," and to reimburse him "for the difference between the salary earned as an Office Technician and the salary he would have earned as the Health Care Coordinator Analyst." Employer appealed the ALJ's proposed decision to the Board, and PERB granted permission to the State Personnel Board (SPB) to file a brief regarding the ALJ's proposed remedy.

In April 2021, PERB issued a decision agreeing with the ALJ that Employee would have been promoted to the HCCA position but for his protected union activities. PERB noted that Employer did not challenge the elements underlying the ALJ's finding that Employee established a prima facie case of discrimination. With respect to Employer's affirmative defense, PERB stated, "Over time, [Employer] has shifted its rationale for rejecting [Employee]. [Employer's] initial position statement to PERB stated that it rejected [Employee] because of his work in the [out-of-class] role, including missing deadlines. As discussed above, ... McKinney falsely accused [Employee] of missing a single deadline as part of her stated plan to deny [Employee] the position because she felt his true job was with SEIU and he could not both be a steward and be the HCCA, as well as based on her likely covert hostility over [Employee] and SEIU representing employees who had complaints against her.... [¶] At the hearing, [the human resources manager on the hiring panel] gave an equally unsupportable explanation, which was that the disparity between the top ranked candidate's score and the second and third ranked candidates' scores justified re-posting the job announcement once the top-ranked candidate declined the position. The ALJ was correct to reject this explanation, as it does not comport with what happened. The

8

panel readily moved on from the first-ranked candidate to the second-ranked candidate, halting its usual progression only after the second-ranked candidate did not work out. [¶] [Employer] now argues that the prime factors that disqualified [Employee] for the position were his temperament, performance during the interview, work ethic, and work product." After considering the evidence, PERB found these asserted factors pretextual and agreed with the ALJ that "animus ... infected the decision not to move forward with [Employee's] candidacy after the first two candidates did not work out, and [Employer] did not meet its burden to show that it would have rejected [Employee] in the absence of his protected union activities."

Turning to the appropriate remedy, PERB modified the ALJ's proposed remedy of appointing Employee to the next available AGPA/SSA position because "the AGPA classification comprises a diverse swath of both administrative and programmatic roles." Instead, PERB directed Employer "reclassify [Employee] into the AGPA classification retroactively to September 29, 2017," "assign [Employee] appropriate duties at San Quentin until the San Quentin Health Care Compliance Analyst position next becomes vacant, and at that point place [Employee] in the position, if he remains an active State of California employee at that time."[8] PERB explained that "[a]ppropriate duties are those within the general ambit of the AGPA classification that [Employer] reasonably believes [Employee] can perform or learn to perform through typical on-the-job training."

---

[8] PERB explained, "we decline to require [Employer] to remove the current incumbent HCCA to make room for [Employee]. Rather, we reaffirm that in the normal course it does not effectuate the purposes of the Dills Act to displace an incumbent chosen for a promotion over a discriminatee."

9

Employer petitioned this court for a writ of extraordinary relief. (§ 3520, subd. (b) ["Any ... respondent ... aggrieved by a final decision or order of the board in an unfair practice case ... may petition for a writ of extraordinary relief from such decision or order."].)

## DISCUSSION

### I.  *Violation*

Employer argues the Board's finding that Employer violated the Dills Act by unlawfully retaliating against Employee is not supported by substantial evidence.  We disagree.

#### A.  *Standard of Review*

"The standard of review for PERB's factual findings is established by statute.  'The findings of the board with respect to questions of fact, including ultimate facts, if supported by substantial evidence on the record considered as a whole, shall be conclusive.'  (§ 3509.5, subd. (b).) ... Accordingly, in reviewing PERB's findings ' "we do not reweigh the evidence.  If there is a plausible basis for the Board's factual decisions, we are not concerned that contrary findings may seem to us equally reasonable, or even more so.  [Citations.]  We will uphold the Board's decision if it is supported by substantial evidence on the whole record." ' " (*Boling v. Public Employment Relations Board* (2018) 5 Cal.5th 898, 912, fn. omitted (*Boling I*).)

" 'In the case where the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals, it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment.... [¶] Thus, where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of

10

the appellant as a matter of law.' " (*Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838 (*Dreyer's*).)

B.     *Legal Background*

The Dills Act renders it unlawful for a state employer to "[i]mpose ... reprisals on employees, [or] to discriminate ... against employees ... because of their exercise of rights guaranteed by this chapter." (§ 3519, subd. (a).) "To state a prima facie case of discrimination or retaliation [for protected activity], the charging party must show (1) [the charging party] engaged in protected conduct known to the employer; (2) the employer took adverse action against the charging party; and (3) the adverse action was unlawfully motivated, i.e., taken because of the charging party's exercise of protected activities." (*Trustees of Cal. State University v. Public Employment Relations Bd.* (1992) 6 Cal.App.4th 1107, 1123 (*Trustees*).)[9] "The charging party has the burden of showing protected conduct was a motivating factor in the employer's decision." (*Id.* at p. 1129.)

"Once [a prima facie case] is established, then the burden shifts to the employer to establish an affirmative defense. Typically, the employer must show that despite the antiunion motivation, the employment decision would have been taken anyway, for other, legitimate business reasons. . . . A mixed-motive situation exists where legitimate business reasons arguably concur with antiunion motivations as the basis for an employment decision. The test of employer conduct in such a situation is a 'but for' test—whether the discharge or other violation of protected activity would have occurred regardless of the improper antiunion motivation. This is an affirmative

---

[9] Although *Trustees* involved the Higher Education Employer-Employee Relations Act (§§ 3560–3599) rather than the Dills Act, the relevant statutory language is identical. (Compare § 3519, subd. (a), with § 3571, subd. (a).)

defense which the employer must establish by a preponderance of the evidence, once the charging party has proved antiunion animus played any part in the decision." (*Trustees, supra,* 6 Cal.App.4th at pp. 1129–1130.)

C. *Analysis*

Employer argues the violation alleged in the administrative complaint was Employer's decision to offer the HCCA position to the top-ranked candidate rather than to Employee, but PERB found a violation based on Employer's decision to leave the position vacant rather than offer it to Employee.[10] Employer contends PERB thereby violated a doctrine preventing the Board from considering unalleged violations unless certain requirements are met. (See *Trustees of the California State University* (2018) PERB Dec. No. 2549-H [42 PERC ¶ 104] ["The Board may only consider an unalleged violation when: '(1) adequate notice and opportunity to defend has been provided the respondent; (2) the acts are intimately related to the subject matter of the complaint and are part of the same course of conduct; (3) the unalleged violation has been fully litigated; and (4) the parties have had the opportunity to examine and be cross-examined on this issue.' "].)

Employer failed to raise this objection before the Board. The ALJ's proposed decision characterized Employer's "choice, to the extent there was

---

[10] Employer mischaracterizes the conduct identified by the Board as constituting a violation. The decision targeted by the Board was Employer's decision not to promote Employee after the top two candidates did not fill the position: "animus ... infected the decision not to move forward with [Employee's] candidacy after the first two candidates did not work out, and [Employer] did not meet its burden to show that it would have rejected [Employee] in the absence of his protected union activities." Although the decision to repost the position followed naturally from the decision not to move forward with Employee's candidacy, the decision to repost was not the conduct the Board found unlawful.

one," as being "between [Employee] and a vacancy."  In its brief to the Board, Employer did not take issue with the ALJ's characterization of this issue, but instead argued Employer "did not promote [Employee] due to legitimate concerns regarding his temperament and work history."  Employer has thus failed to exhaust this argument.  (*Sierra Club v. San Joaquin Local Agency Formation Com.* (1999) 21 Cal.4th 489, 510 (*Sierra Club*) ["The general exhaustion rule" provides that "[a]dministrative agencies must be given the opportunity to reach a reasoned and final conclusion on each and every issue upon which they have jurisdiction to act before those issues are raised in a judicial forum."].)[11]

Even if the argument were properly before us, we would reject it because Employer's assertion that the allegations of the complaint were limited to Employer's decision to offer the position to the top-ranked candidate is not supported by the record.  The complaint provides, "On or about October 10, 2017, [Employer] took adverse action against [Employee] by denying his application for promotion to [the HCCA] position or similarly advanced position at San Quentin."[12]  Employer claims this allegation must

---

[11] Employer's assertion that it raised the issue before the ALJ—even assuming it did so—is insufficient.  Employer appealed the ALJ's proposed decision with the Board and, under PERB regulations, the Board "will not consider ... issues and arguments not raised in the" brief to the Board.  (Cal. Code Regs., tit. 8, § 32300, subd. (e).)  PERB therefore did not have an opportunity to consider this issue.

[12] October 10, 2017 appears to be the approximate date that Employee received notice of his rejection.  The ALJ's proposed decision explains, "The evidence presented at the hearing tends to establish that [Employer] denied [Employee's] promotion on September 29, but failed to notify him of that fact at any time before October 6, the date the notice was mailed to him.  No facts were presented establishing that any operative event occurred on October 10, 2017.  Nevertheless, [Employer] ... did not present any evidence to refute

13

refer to Employer's decision to offer the position to the top-ranked candidate instead of Employee because that was the only decision taking place before October 10. As set forth in the background facts above, while the record does not reveal the precise date the top-ranked candidate withdrew her acceptance, there are emails from September 5 and 8 indicating she was likely to withdraw, and suggesting that September 11 was a critical date for the decision to be made. This evidence gives rise to a reasonable inference that the top-ranked candidate withdrew her acceptance well before October 10. These emails also indicated the hiring panel was moving forward with the second-ranked candidate's application around the same time. Therefore, there is evidence in the record supporting the inference that, by October 10, Employer knew the top two candidates were not going to fill the position and nonetheless decided not to move forward with Employee's candidacy.[13]

Employer also contends it was improper for PERB to rely on the antiunion animus exhibited by McKinney and Tootell because there was no evidence the other two members of the hiring panel exhibited such animus, there was no evidence McKinney and Tootell influenced the interview scores the other two panelists gave Employee, and the disparity in scores between Employee and the top-ranked candidate provides a legitimate business reason for Employer not to promote Employee to the position. PERB found it more likely than not that McKinney and/or Tootell influenced the other

[Employee's] assertion that he learned of [Employer's] September 29 decision sometime after October 6, 2017."

[13] Although Employer asserts the decision to repost the position was not made until November 20, 2017, the record cites provided demonstrate the position was in fact reposted around November 20 but do not provide evidence as to when the decision to repost was made.

14

panelists by, for example, sharing the pretextual allegation that Employee had missed deadlines: "the nature of the interview panel consultation process, combined with McKinney's admitted agenda to deny [Employee] the position and the fact that she shared the story with Tootell, suggests it is more likely than not that McKinney or Tootell shared at least the gist of the allegation [of missed deadlines] when the panel discussed [Employee]." PERB also found this influence likely resulted in lower interview scores for Employee: "[Employee] more likely than not experienced one or more depressed interview scores as a result of misinformation about his having missed deadlines." Substantial evidence supports these findings. In any event, Employer's continued focus on the interview scores is misplaced. PERB rejected Employer's reliance on the disparity in scores between Employee and the top-ranked candidate because the hiring panel proceeded to consider the second-ranked candidate, whose scores were only slightly higher than Employee's.

Employer argues PERB's reasoning is undermined by the absence of evidence that Employer offered the position to the second-ranked candidate. Not only does Employer raise this issue for the first time in its opening brief on writ review, it has twice affirmatively represented that the second-ranked candidate declined the position. In its closing brief to the ALJ, Employer defended its decision not to "offer the position to [Employee] *after the top two candidates declined the position* ...." (Italics added.) Similarly, in its writ petition in this court, Employer alleged that, like the top-scoring candidate, "*The second highest-scoring candidate also declined the position.*" (Italics added.)

We need not decide whether Employer may nonetheless raise the argument because it is meritless in any event. First, there is evidence that

15

after it appeared the top-ranked candidate would rescind her acceptance, the hiring panel proceeded to check the references of the second-ranked candidate. PERB could draw a reasonable inference that the panel was willing to offer the position to the second-ranked candidate despite her scores being substantially lower than the top-ranked candidate, which is sufficient to defeat Employer's reliance on the disparity in scores. Moreover, it was Employer's burden to establish its affirmative defense that it did not offer the position to Employee because his scores were so much lower than those of the top-scoring candidate. Employer must therefore demonstrate the evidence compels a finding in its favor (*Dreyer's, supra,* 218 Cal.App.4th at p. 838), which it cannot do absent evidence that it did not consider the second-scoring candidate either. Employer has not so shown.

Employer argues the decision to repost the position was not an adverse action but rather was "tantamount to an invitation to try again." As noted above, the conduct that PERB found violative of the Dills Act was Employer's decision not to proceed with Employee's candidacy after the two top-ranked candidates did not fill the position, not the decision to repost. (See *ante,* fn. 10.) In any event, Employee was not invited to apply again; instead, he was told another candidate had been selected, although the position was subsequently reposted. Moreover, by late August, Employee knew of McKinney's preinterview statement that Employee was not getting the position because of his Union work, had informed the human resources manager of the statement, and had seen no action taken as a result, giving Employee no reason to think the outcome would be different if he applied again. The Board could reasonably find Employer's decision not to promote Employee after the top two candidates did not fill the position was an adverse action and not an invitation to apply again.

16

Employer contends there was no showing that the decision to repost the position was made by anyone with knowledge of Employee's protected activity. Again, the critical decision was to not proceed with Employee's candidacy after the two top-ranked candidates did not fill the position, and the evidence was clear that this decision was made by the hiring panel and Harris.

Employer challenges the Board's finding that, at the time Employer notified Employee he had not been chosen, its representation that another applicant had been selected was false. Employer argues there was no evidence the top-scoring candidate had withdrawn her acceptance at this time. As discussed above, in light of the evidence that Employer knew in early September the top-scoring candidate was likely to withdraw, PERB could reasonably infer that she had done so well before Employee was notified of his rejection.

Finally, Employer argues the Board improperly drew a negative inference from Employer's redaction of the hiring panelists' interview notes. During the evidentiary hearing, Employer produced the hiring panel's interview scores but redacted their written comments. The Board expressly stated it was not drawing a negative inference from this redaction: "we do not draw any inference from the fact that [Employer] sought to maintain confidentiality of certain materials and to provide evidence in a different manner, mainly through witness testimony from interview panel members."

In sum, Employer has failed to demonstrate the Board's finding that Employer retaliated against Employee because of his protected activity was not supported by substantial evidence.

17

II.    *Remedy*

Employer argues the Board's remedies—that Employee be placed in the next available HCCA position at San Quentin if he is still in state employment at that time, and that until then Employee be retroactively reclassified into the AGPA classification and assigned duties generally appropriate for that classification—violate the constitutional merit principle. We reject the challenge.

A.    *Standard of Review*

"We review PERB's remedial orders for abuse of discretion.  [Citation.] Generally, a 'remedial order "should stand unless it can be shown that the order is a patent attempt to achieve ends other than those which can be fairly said to effectuate the policies of the Act." [Citations.]'  [Citations.] [¶] Nonetheless, PERB's remedial orders ... may not encroach upon statutes and policies unrelated to the Act and, therefore, outside of PERB's competence to administer." (*Boling v. Public Employment Relations Bd.* (2019) 33 Cal.App.5th 376, 387–388 (*Boling II*).)

B.    *Legal Background*

"Enacted in 1977, the Dills Act (formerly known as the State Employer–Employee Relations Act or SEERA) 'accords collective bargaining rights to state civil service employees.'  [Citations.] ... [¶] The Dills Act also 'vests broad jurisdiction in [PERB] to investigate and act upon unfair labor charges and alleged violations of the act.'  [Citation.]  To this end, subdivision (a) of section 3514.5 provides that '[a]ny employee, employee organization, or employer shall have the right to file an unfair practice charge' with the Board ....." (*California Assn. of Professional Scientists v. Schwarzenegger* (2006) 137 Cal.App.4th 371, 380 (*Professional Scientists*).)  PERB is authorized to "issue a decision and order directing an offending party to ... take such

affirmative action, including, but not limited to, the reinstatement of employees with or without back pay, as will effectuate the policies of this chapter." (§ 3514.5, subd. (c).)

Turning to the merit principle, "Article VII of the California Constitution provides that, generally, the civil service includes 'every officer and employee of the State' (*id.*, art. VII, § 1, subd. (a)) and that permanent appointment and promotion in the civil service 'shall be made under a general system based on merit ascertained by competitive examination' (*id.*, art. VII, § 1, subd. (b)). This constitutional mandate, known as the 'merit principle,' was adopted by California voters in 1934 in an effort to eliminate the 'spoils system' of political patronage from state employment and to ensure that 'appointments and promotions in state service be made solely on the basis of merit.' [Citations.] Another constitutional provision, also adopted in 1934, calls for a nonpartisan personnel board (the SPB) to enforce the civil service statutes (Cal. Const., art. VII, §§ 2, 3, subd. (a)) and for an executive officer to administer the statutes under the SPB's rules (*id.*, §§ 2, subd. (c), 3, subd. (b))." (*California State Personnel Bd. v. California State Employees Assn., Local 1000, SEIU, AFL-CIO* (2005) 36 Cal.4th 758, 764–765, fn. omitted (*Cal. State Employees Assn.*).)

"By its terms, the constitutional provision [establishing the merit principle] unmistakably commands that all permanent appointments and promotions in the civil service be based on merit, and that merit be determined on the basis of competition." (*Cal. State Employees Assn., supra,* 36 Cal.4th at p. 770.) " 'In a competitive examination, the candidates match their qualifications each against the others, and the final determination is made by rating and comparison.' " (*Alexander v. State Personnel Bd.* (2000) 80 Cal.App.4th 526, 542.) " '[T]he cornerstone of the constitutional merit

19

principle is a competitive examination process that determines merit, effectiveness and fitness for appointment and promotion. [Citations.]' [Citation.] The word 'competitive' denotes a rivalry, contending with others. It encompasses a comparison of relative merit." (*Ibid.*)

C.   *Analysis*

We begin by emphasizing the egregious nature of the conduct in this case—conduct that violated *both* the Dills Act and the merit principle. Hiring panel members expressed explicit bias against Employee because of his Union activities. Despite being the third-ranked scorer of the applicants, designated "competitive" by the hiring panel, and the most qualified applicant remaining after the first- and second-ranked applicants did not fill the position, Employee was not hired. The facts are unacceptable and, as PERB's counsel confirmed at oral argument, are highly unusual and unique.

We note also, however, that the two remedies ordered—placement in the next available HCCA position and retroactive reclassification to the AGPA classification, a higher classification than Employee currently holds—are each effectively a promotion, which is a disfavored remedy for discrimination. "[I]n fashioning a remedy for employment discrimination courts are hesitant to order that the injured party be promoted. [Citation.] 'The problem is that the courts are uncertain as to whether the plaintiff is really qualified for the promotion, and they are hesitant to usurp the prerogatives of management in determining, interpreting, and applying the qualifications. When dealing with a ministerial promotional scheme, say when only length of time on the job is involved, the courts have little difficulty in ordering promotion. Unfortunately, many promotions involve more subtle and complex qualifications, and there the courts fear to tread. They prefer to alter the promotional scheme to remove its discriminatory

20

aspects, leaving the plaintiff free to reapply for the promotion and the employer free to determine, in a nondiscriminatory manner, whether the plaintiff is qualified for the job.' " (*Dyer v. Workers' Comp. Appeals Bd.* (1994) 22 Cal.App.4th 1376, 1382–1383.)

Nonetheless, Employer conceded at oral argument that PERB has the authority to order promotion as a remedy for discrimination.[14] Employer clarified that a promotion order would not violate the merit principle if there was a valid competitive examination and the individual was the most qualified candidate. Employer contends neither of these requirements is met here. First, Employer, joined by amicus SPB, argues the initial HCCA hiring process was not a competitive examination because PERB found it was tainted by discrimination. But the only problem identified with the hiring process was the discrimination *against* Employee. PERB did not find that the discrimination-free outcome could not be determined; to the contrary, it found that absent the discrimination, if the process had been purely merit-based, Employee would have been hired. We have held above that PERB's findings are supported by substantial evidence. Accordingly, we reject Employer's contention that the 2017 hiring process was not a competitive examination.[15]

---

[14] SPB similarly conceded in its brief to PERB, stating, "if it is established that the individual would have received the appointment but for the unlawful conduct, PERB could conceivably order the individual appointed to the specific position that was unlawfully denied."

[15] Cases relied on by Employer in which there was no competitive examination are therefore distinguishable. (See *Kidd v. State* (1998) 62 Cal.App.4th 386, 391, 401 [program allowing "certain minority and female applicants for positions in the state civil service to be considered for employment even though they did not place in the top three ranks of the list of eligible candidates" violates the merit principle]; *Cal. State Employees Assn., supra,* 36 Cal.4th at pp. 763, 775–776 [programs requiring promotions

Next, Employer, again joined by amicus SPB, argues Employee was not the most qualified candidate for the HCCA position. The merit principle does not require that, if the most qualified candidate refuses the position, the hiring authority must restart the hiring process; instead, as Employer does not dispute, the hiring authority plainly may proceed to the next most qualified candidate. (See Cal. Code Regs., tit. 2, § 254 [SPB regulation providing "the appointing power shall fill a vacancy in a class by selection from the highest three eligibles certified *who are willing to accept employment* under the conditions of employment specified" (italics added)].) Employer relies solely on its argument that the record is silent as to the status of the second-ranked candidate. We have already rejected this contention. The first- and second-ranked candidates did not fill the position, Employee was at least the third most qualified candidate,[16] and but for Employer's discrimination Employee would have been offered the position as the most qualified candidate willing to accept it. This case therefore meets Employer's definition of one in which PERB could appropriately order a promotion remedy.

Employer and SPB argue PERB's finding that Employee was the most qualified candidate in the 2017 hiring process does not mean Employee will

be awarded solely on the basis of seniority violate the merit principle]; *Noce v. Department of Finance* (1941) 45 Cal.App.2d 5, 10 [merit principle violated by reclassifying employee "without competitive examination"]; *Hastings v. Department of Corrections* (2003) 110 Cal.App.4th 963, 974–977 [employee with a disability "is not entitled as an accommodation to reassignment to a position in a different civil service classification without complying with the competitive examination process of the civil service laws"].)

[16] PERB found "[Employee] more likely than not experienced one or more depressed interview scores as a result of misinformation about his having missed deadlines."

be the most qualified candidate when the HCCA position next becomes vacant, nor does it mean Employee will be the most qualified candidate for the duties Employer must assign him in the AGPA classification until the HCCA position becomes vacant. Employer argues that, if an individual was the most qualified candidate and was not appointed because of discrimination following a competitive examination process, the remedy would be to unseat the individual who was given that position and order the most qualified candidate placed in the position. However, Employer argues PERB cannot so order in this case because there was a second hiring process following the one in which Employee was discriminated against, resulting in the hiring of the most qualified candidate from that hiring process. Employer argues PERB is therefore limited to ordering Employer to allow Employee "to compete for available positions for which he is eligible without retaliation or discrimination."

Both Employer and PERB agree (albeit for different reasons) that PERB should not order the current holder of the HCCA position unseated and replaced by Employee. PERB did not abuse its discretion in declining to order Employer's proposed remedy, which would merely order Employer to do what it should have done in the first place: comply with the law. As noted above, we have found that under the test set forth by Employer, a promotion remedy is not an abuse of discretion here. In this unique factual situation—a promotion selection process that egregiously violated both the Dills Act and the merit principle, where placing the discriminated employee in the position the employee would have received but for the discrimination is not an

available remedy—we find PERB's selected remedies are not inconsistent with the merit principle.[17]

However, we reject PERB's suggestion that its order precludes Employer from imposing a probationary period if and when Employee accepts the next HCCA position at San Quentin.[18]  (See *Cal. State Employees Assn., supra,* 36 Cal.4th at p. 766 ["The probationary period gives the appointing power 'the opportunity to observe the conduct and capacity of the probationer, and if, in the opinion of that power, the probationer is not fitted to discharge the duties of the position, then [the probationer] may be

---

[17] We decline to consider arguments Employer failed to exhaust, raised in a footnote, failed to support with citation to authority, and/or raised for the first time in its reply brief.  (*Sierra Club, supra,* 21 Cal.4th at p. 510; *Holden v. City of San Diego* (2019) 43 Cal.App.5th 404, 419 ["An appellant cannot bury a substantive legal argument in a footnote and hope to avoid waiver of that argument."]; *Los Angeles Unified School District v. Torres Construction Corp.* (2020) 57 Cal.App.5th 480, 497 [" ' "In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record." ' [Citation.]  We may and do disregard arguments that ' "fail to disclose the reasoning by which the appellant reached the conclusions [the appellant] wants us to adopt." ' "]; *Tellez v. Rich Voss Trucking, Inc.* (2015) 240 Cal.App.4th 1052, 1066 [" ' " [P]oints raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before.' " ' "].)  We also decline to consider the parties' arguments regarding whether retroactive reclassification is a more effective remedy than an award of front and back pay.  (*Mt. San Antonio Community College Dist. v. Public Employment Relations Bd.* (1989) 210 Cal.App.3d 178, 189 [" 'Because the relation of remedy to policy is peculiarly a matter for administrative competence, courts must not enter the allowable area of the [agency's] discretion and must guard against the danger of sliding unconsciously from the narrow confines of law into the more spacious domain of policy.' "].)

[18] In its response to SPB's amicus brief, PERB urges us not to modify its order to require a probationary period for the HCCA position.  Neither Employer nor SPB sought such a remedy.

discharged by the summary method provided for in the Civil Service Act before [the probationer] acquires permanent civil service status.' [Citations.] This serves 'to supplement the work of the civil service examiners in passing on the qualifications and eligibility of the probationer.' "].) Although PERB suggests its order prohibits such a probationary period upon Employee's acceptance of the HCCA position even if one is required by the applicable statutes and regulations, we see no basis to so read the order. PERB asserts McKinney would be Employee's supervisor during any probationary period in the HCCA position (and would unfairly evaluate him), but the assertion is sheer speculation. Moreover, such a remedy would not serve to make Employee whole, as it would place him in a better position than he would have been but for the discrimination.

## DISPOSITION

The petition for writ of extraordinary relief is denied. PERB shall recover its costs on appeal. (Cal. Rules of Court, rule 8.493(a).)

_____
SIMONS, Acting P.J.

We concur.


_____
BURNS, J.



_____
WISEMAN, J.*



(A162617)



_____

      * Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

26